in this case Justice Brown challenges his convictions for possession of cocaine and it is our contention that the circuit court erred in not raising the issue of Mr. Brown's fitness for trial and fitness to represent himself. It's error to allow a defendant to go pro se if there's a bona fide doubt of his mental fitness or his confidence. A defendant has to have the use of his mental facilities to make an effective waiver of his right to counsel. The record in this case is full of pro se motions, Mr. Brown files, many of which the judges in the circuit court noted were nonsensical, impossible to read, and yet at no point did any of the judges who sat on this case stop to say this individual isn't making sense, appears to have delusions, and needs to be examined for fitness. Trial confidence is really about having a rational and factual understanding of the proceedings and it's our contention that a review of the record will show that Mr. Brown simply didn't have a rational understanding of what was going on and in fact judges remarked on that in pretrial motions that it just appeared he didn't know what he was doing, he didn't know what was going on, and while judges recognized the questions of his confidence, they simply didn't take it to the next step and stop the proceedings and say let's have a mental examination. How long was this defendant institutionalized prior to this case? I believe in the preceding case, I believe it was four months of mental health commitment. And then how long after he was released from the institution did this instant situation occur? Well, the prior Brown case was 2007, I believe, so it may have been a year, 18 months. As I note, among the motions Mr. Brown filed were ones indicating that he believed that Madison County was going to pay for testing of the controlled substance, that bio-defense. Right before trial he filed a motion stating that he was a licensed paralegal and attorney and he had a law practice in the Madison County Government Building. His questioning of the state troopers in this case indicated a delusional quality. The state argues that he's a bad lawyer, but that's not something that means he's not fit, it just means he's not a good lawyer. But an examination of his questioning shows Mr. Brown is on trial for possession of controlled substances and the essence of what he's trying to do in court is argue about whether or not the traffic stop was proper or not. He dwelt at length on whether the intersection where the traffic stop was marked and whether the state trooper had any basis for making the traffic stop. In the face of the trooper's testimony that his vehicle did not have a camera to record the traffic stop, Mr. Brown appeared to simply disregard that and believe that the video had somehow been destroyed or that there was some effort by the state to hide this from him. And in post-trial he filed a motion saying that he believes that the forensic scientist testified that the controlled substance didn't test positive as a controlled substance and that the evidence regarding the field test which caused the substance found to turn blue color, that there was a trick play that a piece of tape was put on the evidence package to, and that was the blue color that the evidence technician was claiming, or that the trooper was claiming was the blue reaction in the field test. This simply doesn't conform with the testimony at all. It's as if he's in another world when he's hearing this testimony, further evidence of delusion that disabled him from being able to represent himself. The basic point to make here is that the court should have inquired into Mr. Brown's fitness, and they failed to. When a defendant takes it upon himself to represent himself, he does that. There's no doubt of that. But there's also a responsibility on the court. A defendant with counsel, the counsel is there to protect the defendant, and if the defendant begins to manifest a mental illness, the defense attorney is the first person who should stop and say, we need a fitness hearing. This man is no longer understanding what's going on. When that attorney is not there, it's on the court to have that responsibility to say, is this man before me understanding what's going on? Is he functionally capable of defending himself and understanding what is happening in trial? And in this instance, unfortunately, the circuit court in Montgomery County failed to do that. Did any of the judges talk about a standby counsel to assist him in the record? No, no. I don't believe there's anything in the record about a standby counsel. And one of the judges made statements like he's not making any sense, he doesn't know what he's doing. Two different judges, I believe, in the pretrial process early on both said, you're not making sense. There was a preliminary hearing, and then there was an effort at a suppression hearing, where Mr. Brown made no effort to put any evidence, and I believe in both judges said, you don't appear to know what you're doing, you don't appear to understand what's going on here, and nevertheless, they simply let the process continue. So, Your Honor, we ask the support of diversity, conviction, and remand in this case for the proceedings. Thank you, counsel. Counsel? Thank you, Your Honor. May it please the court and counsel, my interpretation of the judge's comments in this regard is a little bit different. My reading is that the judge's questioning of the defendant related more to whether or not his choosing to proceed pro se was a wise choice given the fact that the legal arguments he was making didn't seem to be something the lawyer would be able to pursue. I don't think that they're indicative of a court's expression of an incompetency or an inability to understand the nature of the charges or the proceedings against them. So I would, in that regard, ask this court to examine those comments carefully because, you know, courts are presumed to know and follow the law. Certainly if the court had come to some at least preliminary conclusion once or twice in the record, or four different judges where the defendant appeared before and had subsequent proceedings take place, that they would have at that point perhaps raised to a sponte a question of whether there's a bona fide doubt that the defendant's fitness. I think those comments are generally the type that you would see from courts about people proceeding pro se and whether or not it's really such a good idea because, you know, the fool for a client, actually, the people representing themselves. But, Mr. Daly, leaving those statements aside, doesn't there appear to be a number of indications that he did not have a grasp of reality? No, I disagree. Okay. And you're entitled to that, obviously. But I just want to take, for example, where he made the statement that he was an attorney and that's what he did for a living and he had three floors, full offices with employees in it, in the courthouse. I will grant you that there are some instances in the record. And if we take the record and we cherry pick certain motions or certain statements and then extrapolate that into a broader suggestion that the defendant was unfit, the defendant has a good argument in this case. What I'm asking this Court to do, though, however, is to not cherry pick certain parts of it, but actually look at the whole record. But if I thought I was a doctor and tried to perform surgery and instead I had a law license, wouldn't you think I was pretty much unfit to perform surgery? If a person thinks that they're a great lawyer. No, not a great lawyer, just a lawyer, and they are. Even if a person concerns himself with being a lawyer, it doesn't mean he doesn't understand the nature of the proceedings or the charge against him. And that's the fitness standard. So, you know, not every person who represents themselves, not every person who receives per se, not every person who stands trial, necessarily is going to be the same as you or I. Okay? What has to be looked at here, and what we have is a cold record. Okay? So we only have what happens in the motions which the defendant relies upon a lot. But we also have what happens at the hearings, at the trial, the cross-examination, the defendant's articulation of what the case is and what he understands it to be, is all part and parcel of what it should animate a circuit court to make a sua sponte, a conclusion that there may be a bona fide doubt in the defendant's fitness. So my point is this. I'll grant the court, I'll grant the defendant, even in the context of your question, Your Honor, that there are instances that perhaps raise an eyebrow. However, the fact that the defendant may consider himself to be a lawyer, a lawyer, isn't necessarily the same as the defendant coming in and saying, I'm Napoleon Bonaparte, and you should all bow before me. I mean, it's just a matter of his sort of self-recognition of his legal skills. But he understood the charge. Okay? And I think as you look at the record, you're going to see that the defendant, and I make points about this in the brief, of course, but he challenges the defendant, the defendant challenges the search and asks why did the officer only pat down one pocket, if his ostensible purpose was for officer safety purposes. He challenged why the officer didn't stop when there was an inconclusive drug test, why he didn't collect the loose cannabis that was found at the time of the traffic stop. He challenged, he wanted to bring in evidence with regards to whether or not there was actually a stop sign there, which was the basis for the stop, for the traffic stop. He challenged the fact that the officer who acknowledged as much did not stop another vehicle that had made a similar violation of the law. He challenged the fact that there was a videotape of the stop that was destroyed as part of, I guess, the usual process of videotapes that are now preserved. And all in all, and I think that you can go on and on, but I think the point of the matter is that whether the defendant had some sort of, we'll call it delusion even for the sake of argument here, that he was a lawyer, he was nonetheless a lawyer representing himself on charges that he understood that he actually did as good a job as I suppose he could do, even the fact that this was kind of a dead bag winner for the state. And everything the defendant did was rationally related to the charge that he was facing. But when you talk about cherry picking, it sounds like you're doing the same thing. I mean, if you say he actually could represent that he was representing himself, but to say that that's what he did for a living and he had three floors of offices, I mean, that's not true. Well, let me start initially by saying I don't think that I'm cherry picking anything. What I'm giving you is I'm giving you a full spectrum of what happened from the time of the plume you're hearing all the way through the end of the trial. But the requirement before the judge is not to conclude that he is unfit. It's just a doubt, a bona fide doubt that he potentially is unfit. But on the other hand, the trial judge is in a far better position than you or I to interact with the defendant and see how he's handling himself in court, may look at that particular aspect to see that nonetheless the defendant is still cogent, coherent, comprehending what the nature of the proceedings are. And therefore, I mean, I guess it comes down to what is a bona fide doubt? Is a bona fide doubt the instance the defendant does something that seems to be off-center? Is that now creative, sui sponte, an issue of bona fide doubt, and therefore the court should stop the proceedings? So if he thought he was Napoleon Bonaparte throughout the entire proceeding but did a pretty decent job of representing himself, would that be okay? No. Okay. What I'm saying is that the person who sees himself as an actual lawyer understands that he's involved in legal proceedings, that he may have elevated himself to the status of a lawyer. And I'm not going to sit here and say that me, as a lawyer, I'm so exalted that someone who calls himself a lawyer is somehow diminishing my status. But what I'm saying is if you're Napoleon Bonaparte and you're operating in some parallel universe and you don't seem to understand what the charges are in that context, then you have, you know, we can split hairs about what is and isn't. The point I'm trying to make is that if the defendant perceives himself to be a lawyer and acts as a lawyer, it nonetheless doesn't diminish the fact that he understood the nature of the proceedings and the charge against him. And that is what the court should do. Were any of these judges aware of this court's prior finding of incompetence of this defendant? Is there anything in the record that would reflect that, that they knew that we had found in a written opinion? Well, this court actually didn't make that finding. It was found by the circuit court in a prior proceeding. And the only thing this court considers is whether or not, on the basis of that, the defendant should have been allowed to proceed. Were they aware of that, then? No, because those are two different counties, two different prosecutions. I don't believe that they're aware of that. But, you know, I do want to say and I want to caution against the use of this prior Rule 23 order. I understand the defendant's position that this court is allowed to take judicial notice of its own records. There's a tension, I think, between a court being allowed to take its own notice of its own records and what the limitations are in Rule 23, which is that you can only use prior orders for breaches to the county law in the case of double jeopardy. I think that the court is allowed to perhaps notice facts, as was sort of brought out here, what was the length of the defendant's commitment, I guess, or treatment, if you will, in the prior case. I think it's another matter altogether to take aspects of the case and draw legal conclusions from them in an unrelated case, such as the one that's before this Court. That, I think, is more in the nature of a legal analysis, using as precedent the prior Rule 23 order separate from this Court. I think that's a different feature altogether. I guess if we're going to go to that, instead I do have to point out that in that prior case he was found unfit. The presumption of fitness is statutory. Nothing has been shown that that presumption has been overcome in the intervening period. So we go into this case with a presumption of the defendant's fitness. So for whatever value that prior decision is in any of these, again, I don't think that it necessarily translates to something that should be utilized by this Court in finding whether the circuit court, in this case, is averred in not ordering or making a suspended determination of a bona fide doubt of the defendant's fitness. The record is what it is, Your Honor. And so obviously you are going to have to make this determination based upon everything. And I understand and I'm cognizant of the fact that there are certain motions that the defendant filed, which even I admit in my brief are largely difficult to comprehend. But to conclude, Your Honors, it is, however, the entire record, and it has to be looked at within the legal framework of fitness, and that is understand the nature of the proceedings and to assist in your defense in this case. So I think the record amply shows that the defendant was able to, particularly given the facts of this case and the legal nuances involved in drug prosecutions, to undertake that task. I appreciate your time, Your Honor. Thank you, Counsel. Excuse me, Counsel. To answer the Court's, a couple of the Court's questions, on February 5, 2009, Judge Roberts noted in a hearing that it was clear that Mr. Brown didn't know what he was doing when he didn't put on evidence in support of the motion to dismiss charges and that he seemed unclear about what was happening in the hearing. Then on February 12, in front of Judge Cody, Judge Cody questioned whether Mr. Brown knew what he was doing when Mr. Brown indicated that he thought Judge Hackett in Madison County was going to pay for the defense forensic testing of the controlled substance. Judge Cody actually confirmed that Judge Hackett didn't ever do that. And, in fact, when Judge Cody challenged that claim by Mr. Brown, Mr. Brown said that Judge Roberts in Montgomery County had said, well, then we'll pay for the testing, which seems to be divorced from reality. But as the state acknowledges, they said themselves, there are delusions here. The Court asked how long Mr. Brown was in treatment in the preceding case. It looks like he was treated for from May to August, so about June, July, and so probably two, two-and-a-half months worth of mental health treatment. And when the state says, as it does, that, well, he was found fit there and he was tried, and there's a presumption of fitness, it's important to remember that he was fit after two, two-and-a-half months of mental health counseling and probably treatment of various sorts. When this Court reversed its conviction in that case, he was released from incarceration, we don't know what kind of mental health treatments he was getting. I don't think it's reasonable to assume not much. And the record speaks for itself as to his capacity when he was housed in the Montgomery County jail. But the record doesn't show that he was on any kind of medication or not on any medication. It doesn't show that he was or was not in treatment, counseling, inpatient, outpatient. No, we don't have anything from Montgomery County about that. And it's a shame that there apparently was some communication between the judges in Montgomery and Massachusetts County, but not enough to really explore the mental health issues that I think are just replete in the record. Again, it's our contention that this conviction needs to be reversed and remanded so there can be further proceedings in the case. Thank you. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. We'll be in a short time.